In the matter of the alleged lunacy of James L. Davenport.

[Filed November 15th, 1901.]

The testimony taken pursuant to a commission in lunacy was contradictory. There was evidence which, if credited, justified the conclusion that lunacy existed. Yet, upon the whole proof, there was a reasonable doubt of the correctness of this conclusion. The jury had the advantage of a personal examination of the alleged lunatic. The inquisition found that lunacy existed.—*Held*, (1) that an application to set aside the inquisition on the ground that it was against the weight of evidence was properly denied; (2) that the alleged lunatic was entitled to a traverse of the inquisition if he intelligently desired to have it; (3) that it was for the chancellor to determine, by a private examination of the alleged lunatic, conducted either by himself or by a master as his deputy, whether he had such intelligent desire; (4) that it was for the chancellor to initiate this inquiry; that the refusal of counsel for the alleged lunatic to apply for the appointment of a master was not a waiver of his client's right to a traverse, and that an order treating such refusal as a waiver was erroneous.

On appeal by James L. Davenport from a decree denying an application to set aside an inquisition of lunacy, or for leave to traverse the inquisition, or to have an issue to try the fact of his alleged lunacy and confirming the proceedings and inquisition. The conclusions of the chancellor are as follows:

Counsel first asks that the inquisition be set aside on the grounds of various alleged irregularities and omissions appearing in or disclosed by the affidavits taken on this rule.

None of the irregularities and omissions which is made to appear are considered to have tended in the least degree to prejudice the alleged lunatic in his defence of his capacity. The inquisition should not be disturbed on this ground.

It is next insisted that the finding of the jury that Davenport was of unsound mind is not supported by the evidence, but is opposed by a great weight of evidence. It seems that if this ground of objection exists, the inquisition may be set aside. *In re Lawrence, 1 Stew. Eq. 331.*

There was evidence, which, if credited, justifies the finding. There was much contradictory evidence. The jury also had the advantage of a personal examination of the alleged lunatic. What took place at that examination has not been disclosed on this order. But the fact that the jury had examined him, and thereafter rendered a verdict upon that evidence, is deemed to preclude the setting aside of the inquisition upon that ground.

In view of the possibility of the above conclusion being reached, the alleged lunatic further asked, by his petition, that he might be allowed to traverse the inquisition, or that an issue as to his lunacy might be awarded. Such an application is addressed to the discretion of the court, and should be granted, if, upon the whole evidence, a reasonable doubt as to the correctness of the evidence is disclosed. *Van Auken's Case, 2 Stock. 187; James' Case, 9 Stew. Eq. 547; De Hart v. Condit, 6 Dick. Ch. Rep. 611.* The evidence has been examined with care, and the result reached is that a reasonable doubt does exist as to the finding of the jury.

This will justify and require the granting of leave to traverse, if it appear satisfactorily to the court that the person found by the inquisition to be of unsound mind intelligently asks and actually desires such leave. The practice of this court in such cases is to direct the petitioner to be brought before the chancellor for a personal examination, if that is practicable. In this case, the distant residence and the age and infirmities of the petitioner will, no doubt, render impossible his personal appearance before the chancellor. Under these circumstances, the practice is to have him examined by some discreet master of the court, who will report upon his ability to understand and desire a further test. *Van Auken's Case, supra; Lindsley's Case, 1 Dick. Ch. Rep. 358.*

If counsel will apply and arrange for an examination by a master, one will be designated.

*Mr. William L. McCue* and *Mr. George T. Werts,* for James L. Davenport, appellant.

*Mr. Richard Fitzherbert* and *Mr. Willard W. Cutler,* for the respondents.

The opinion of the court was delivered by

ADAMS, J.

A commission, in the nature of a writ *de lunatico inquirendo,* issued out of the court of chancery to inquire of the lunacy of James L. Davenport. The commission was executed, and an inquisition was returned finding that said James L. Davenport, at the time of taking the inquisition, was a lunatic. Thereupon counsel for the alleged lunatic obtained an order to show cause why the inquisition of lunacy should not be set aside, or why said Davenport should not have leave to traverse the inquisition, or have an issue to try the fact of his alleged lunacy. Upon the return of the order to show cause the counsel for the alleged lunatic submitted to the chancellor several propositions.

In the first place, counsel for Mr. Davenport asked that the inquisition be set aside, on the ground of alleged irregularities or omissions appearing in or disclosed by the affidavits taken on the order to show cause. The chancellor refused to disturb the inquisition on this ground. On the hearing of the appeal this point was abandoned.

In the second place, counsel for Mr. Davenport insisted that the finding of the jury that Mr. Davenport was of unsound mind is opposed to the weight of the evidence. The chancellor refused to set the inquisition aside on this ground, saying:

"There was evidence which, if credited, justifies the finding. There was much contradictory evidence. The jury also had the advantage of a personal examination of the alleged lunatic. What took place on that examination has not been disclosed on this order. But the fact that the jury had examined him, and thereafter rendered a verdict upon that evidence, is deemed to preclude the setting aside of the inquisition upon that ground."

There is no doubt that an inquisition, like a verdict in an

,action at law, may be set aside when it is without substantial support in the evidence. *Ridgeway* v. *Darwin, 8 Ves. 65; In re Lawrence, 1 Stew. Eq. 331.* This power is to be employed only in clear cases. The chancellor rightly decided that this proceeding did not call for its exercise.

In the third place, counsel asked that Mr. Davenport be allowed to traverse the inquisition, or ·that an issue as to his lunacy be awarded. In dealing with this application the chancellor made the following accurate statement of the law and practice:

"Such an application is addressed to the discretion of the court, and should be granted if, upon the whole evidence, a reasonable doubt as to the correctness of the evidence is disclosed. *Van Auken's Case, 2 Stock. 187; James' Case, 9 Stew. Eq. 547; De Hart* v. *Condit, 6 Dick. Ch. Rep. 611.* The evidence has been examined with care, and the result reached is that a reasonable doubt does exist as to the finding of the jury. This will justify and require the granting of leave to traverse, if it appear satisfactorily to the court that the person found by the inquisition to be ·of unsound mind intelligently asks and actually desires such leave. The practice of this court in such cases is to direct the petitioner to be brought before the chancellor for a personal examination, if that is practicable. In this case the distant residence and the age and infirmities of the petitioner will, no doubt, render impossible his personal appearance before the chancellor. Under these circumstances, the practice is to have him examined by some discreet master of the court, who will report upon his ability to understand and desire a further test. *Van Auken's Case, ubi supra; Lindsley's Case, 1 Dick. Ch. Rep. 358.*"

The next step would naturally have been for the chancellor to appoint a discreet master and direct him to examine Mr. Davenport. This is the course indicated by *Van Auken's Case, 2 Stock. 186.* Chancellor Williamson's opinion ends with these words:

"I shall direct the petitioner to be ·brought before the court, in order that a private examination may be had for the purpose of ascertaining whether he understands the object of the peti-

tion and desires a traverse. If the distance of the petitioner's residence from the court makes this inconvenient, I shall direct the examination to be made by some discreet master of the court."

So, in *Lindsley's Case, 1 Dick. Ch. Rep. 358,* Chancellor McGill said:

"I concluded that I should not encourage further litigation, unless, upon a private examination of Mrs. Lindsley, I should find that she understandingly desired to traverse the inquisition. Upon inquiry I found that she was unable to attend upon me, and I therefore appointed Mr. Washington B. Williams, a discreet and impartial master of this court, to repair to the house of Paul Fairclo, and there conduct the examination of Mrs. Lindsley in my stead. He has reported to me that, in his judgment, she is not competent to exercise an act of volition."

In the case now under consideration the chancellor did not make an order for the examination of the alleged lunatic. His opinion concludes with this sentence: "If counsel will apply and arrange for an examination by a master, one will be designated." No such application was made. The counsel for the respondents did not make it, for he was satisfied with the inquisition. The counsel for Mr. Davenport did not make it, because he did not think it his duty. On the 10th of October, 1900, the decree appealed from was made. In its reciting part it declared that leave had been given to apply to the court for the appointment of a master to examine the alleged lunatic for the purpose of reporting upon his ability to understand and desire such leave to traverse, and that no such application had been made, and that notice had been given to the solicitor of Mr. Davenport of a motion to confirm the inquisition, and that counsel for Mr. Davenport had declined to apply for the appointment of a master in accordance with the leave granted by the court. In its decretal part it disallowed the application to set aside the inquisition, denied leave to traverse, and confirmed the proceedings and inquisition.

It is evident, from the foregoing statement, that what the appeal brings up, on this branch of the case, is a point of procedure. The question is whether the initiative, as to the pro-

posed inquiry, rested with the chancellor or with counsel for the alleged lunatic. That the chancellor had power to take the initiative is plain. That he should do so seems the. natural course. The examination by a discreet master is merely a substitute for personal examination by the chancellor. In either case the matter is between the court and the alleged lunatic. Both Chancellor Williamson, in the *Van Auken Case,* and Chancellor McGill, in the *Lindsley Case,* call it a "private" examination. It appears from the language of Chancellor Walworth, in *Christie's Case, 5 Paige 242,* that, in his opinion, the examination, whether conducted by the chancellor or by a master, is to be private. What standing has counsel on such an examination? And if counsel can take no part in the inquiry, why should it rest with counsel to initiate it? It squares with the nature and purpose of the investigation that the chancellor should himself originate, direct and control it. The cases, both in this state and in England, indicate that such has been, and is, the practice. *In re Bridge, Craig & P. 338; In re Cumming, 1 De G. M. & G. 537; In re Hanks, 3 Johns. Ch. 567.* This need not involve a retrial by the chancellor of the merits of the controversy, for it may well be, as remarked in an English case, that a lunatic may have an intelligent wish for a traverse.

On this view of what is correct procedure, the refusal of counsel for the alleged lunatic to apply for the appointment of a master was not a waiver of any right. His client's right, under the chancellor's opinion, is a conditional one—the right to traverse the inquisition if he intelligently wishes to do so. That right is still his, and the question as to his intelligent wish is yet undetermined. A decree expressive of these conclusions would take this form: After the proper recitals, it would deny the application to set aside the inquisition, grant leave to traverse, if the alleged lunatic intelligently desires to do so, and appoint a master to examine the alleged lunatic, and report whether it is his wish to exercise that right.

The decree appealed from is reversed, in order that it may be modified to conform to the above opinion.

*For reversal*—THE CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, GUMMERE, FORT, GARRETSON, HENDRICKSON, ADAMS, VREDENBURGH, VOORHEES—11.

*For affirmance*—COLLINS, BOGERT—2.